

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY 15 2006

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| TRUEBEGINNINGS, LLC, d/b/a TRUE.COM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3-05-CV-2152-P |
| DR. ROBERT WELLS, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are Defendant's Motion to Set Aside Default pursuant to Fed. R. Civ.

P. 55(c) and Motion to Dismiss or Transfer Venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C.

§§ 1404(a), 1406(a), both filed on December 29, 2005. Plaintiff responded on January 18, 2006, and

Defendant replied on February 6, 2006. For the reasons stated below, the Court hereby GRANTS

Defendant's Motion to Set Aside Default and DENIES Defendant's Motion to Dismiss or Transfer

Venue. In addition, Plaintiff's request for attorney's fees is GRANTED. Plaintiff shall file

admissible evidence of the attorney's fees and costs incurred in requesting entry of default within

20 days of the date this order is filed. Defendant shall have 10 days from the date of Plaintiff's

submission to file any objections.

### I. Background

Plaintiff filed the instant suit on November 3, 2005, alleging a cause of action under the

Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and common law claims for fraud and breach

of contract. In particular, Plaintiff claims that Defendant, a convicted sex offender, misrepresented his criminal history when he signed up for Plaintiff's online dating service and thereby gained unauthorized access to its membership database.

Defendant was personally served on November 8, 2005, yet he did not answer or move for dismissal within the time allotted by the Federal Rules. As such, on November 30th, Plaintiff requested that the clerk enter default , and the clerk did so on December 5th. On December 29th, Plaintiff filed the instant motions, asking the Court to set aside the entry of default and dismiss or transfer the case based on improper or inconvenient venue.

### II. Motion to Set Aside Entry of Default

#### A. Good Cause

Fed. R. Civ. P. 55(c) provides that a court may set aside entry of default for good cause shown. "To determine whether good cause to set aside a default exists—a decision necessarily informed by equitable principles—[the Fifth Circuit has] found it useful to consider three factors: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (internal quotations and punctuation omitted). These three factors, however, are not talismanic. *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992). "Other factors may also be considered, including whether 'the defendant acted expeditiously to correct the default.'" *Lacy*, 227 F.3d at 292 (quoting *Dierschke*, 975 F.2d at 184). "The term 'good cause' is not susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely." *Dierschke*, 975 F.2d at 183. However, "[t]he willful failure to answer,

the lack of any meritorious defense, and the existence of resulting prejudice to the plaintiff, depending on the circumstances, typically can provide adequate cause for the court to deny a motion to set aside a default." *Id.*

Here, despite the fact that Defendant willfully failed to answer, the Court concludes that it is appropriate to grant relief pursuant to Fed. R. Civ. P. 55(c). First, Plaintiff will not be prejudiced by setting aside the default. "[M]ere delay does not alone constitute prejudice." *Lacy*, 227 F.3d at 293. "Rather, 'the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). Plaintiff has made no such showing here. Second, Defendant has asserted a meritorious defense by challenging the existence of any damages as well as the validity of the contract between the parties. Third, Defendant moved to correct the default fairly expeditiously. Defendant allegedly met with his counsel for the first time on December 2, 2005, four days after the deadline for his response to the summons. Defense counsel then quickly made a request to opposing counsel for an extension of time to file a response, however, entry of default had already been requested. The two sides sought to reach an agreement to set aside the default, but could not agree to the terms. As a result, the instant motions were filed on December 29, 2005, twenty-seven days after entry of default. While the motions could perhaps have been filed sooner,[1] the Court finds that Defendant's response in this particular situation weighs in favor of

---

[1] *See, e.g.*, *Brackens v. Brackens*, No. 05-1377, 2006 U.S. Dist. LEXIS 21563, at *2 (W.D. La. Apr. 10, 2006) (Fed. R. Civ. P. 55(c) motion filed approximately two weeks after entry of default); *Verity Instruments, Inc. v. Kla-Tencor Corp.*, No. 3:06-CV-0005-D, 2006 U.S. Dist. LEXIS 17911, at *2 (N.D. Tex. Apr. 10, 2006) (motion to set aside filed same day as entry of default); *Cordua Restaurants, L.P. v. Uptown Dining, Inc.*, No. 3:05-CV-0449-D, 2005 U.S. Dist. LEXIS 19666, at *5 (N.D. Tex. Sept. 9, 2005) (motions for relief filed three days after entry of default).

setting aside the default.

Based on these considerations and the general preference for adjudication on the merits, the Court finds that Defendant has shown good cause for setting aside the entry of default pursuant to Fed. R. Civ. P. 55(c).

### B. Attorney's Fees

Plaintiff requests reimbursement for the attorney's fees and costs incurred in requesting entry of default. Because Defendant's willful failure to respond to the summons caused Plaintiff to incur these costs, the Court finds that reimbursement is appropriate.[2] *See* 10A Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure § 2700 (3d ed. 1998) (discussing inherent power of the court to impose conditions on the setting aside of default in order to rectify any prejudice suffered by the non-defaulting party). As such, Plaintiff shall file admissible evidence of the attorney's fees and costs incurred in requesting entry of default within 20 days of the date this order is filed. Defendant shall have 10 days from the date of Plaintiff's submission to file any objections.

### III. Personal Jurisdiction

Defendant's motion, styled " Notice of Motion to Dismiss or for Transfer of Venue FRCP 12(b)(3), 28 U.S.C. 1404(a), 1406(a)," focuses on his objections to venue and only tangentially references personal jurisdiction. As such, Plaintiff's response fairly assumes that Defendant has waived any objections to the existence of personal jurisdiction. In his reply, however, Defendant

---

[2] Plaintiff's response only requests reimbursement for the attorney's fees incurred in obtaining the entry of default. Plaintiff does not request attorney's fees or costs incurred in defending the instant motion. The Court's order awarding attorney's fees is therefore expressly limited to attorney's fees and costs incurred in requesting entry of default.

**Memorandum Opinion and Order**
**No. 3-05-CV-2152-P**
**Page 4 of 14**

makes it clear that he did not intend to waive any objections, although he concedes that they were "arguably inartfully raised." Regardless of Defendant's intent, the Court finds that his motion failed to adequately move for dismissal on the basis of personal jurisdiction.

Because the penalty for failing to raise the defense of personal jurisdiction is waiver, litigants are advised "to exercise great diligence in challenging personal jurisdiction, venue, or service of process." *Golden v. Cox Furniture Mfg. Co.*, 683 F.2d 115, 118 (5th Cir. 1982). At a minimum, Fed. R. Civ. P. 7(b)(1) provides that a motion must "state with particularity the grounds therefor" and "set forth the relief or order sought." The rule "does not require ritualistic detail," but simply that the filing "afford[] the court and the opposing party notice of the substance of the basis for the requested order." *Kelly v. Moore*, 376 F.3d 481, 484 (5th Cir. 2004).

Here, Defendant's filing does not put Plaintiff on notice that he is requesting dismissal on the basis of personal jurisdiction. As mentioned above, the motion is styled a motion to dismiss or transfer based on venue. The body of the motion focuses on the arguments in favor of dismissal or transfer based on venue, and only one paragraph mentions personal jurisdiction. Neither this paragraph nor any other language in the motion asks the Court to dismiss the case for lack of personal jurisdiction. One isolated paragraph referencing personal jurisdiction, embedded in the middle of a venue argument and devoid of language requesting dismissal, fails to provide adequate notice that the movant is seeking dismissal based on personal jurisdiction.

But even if the filing had provided adequate notice, the exercise of personal jurisdiction would still be proper because Plaintiff has made a prima facie showing that Defendant contractually agreed to venue in this District. "Because the requirement of personal jurisdiction is a waivable

right, 'there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.'" *Painewebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453 (5th Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985)). For example, "parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction" through a forum selection clause. *Burger King*, 471 U.S. at 473. Such clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *International Software Sys. v. Amplicon, Inc.*, 77 F.3d 112, 114–15 (5th Cir. 1996) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).[3] "The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court." *Mitsui & Co. (USA) v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (quoting *M/S Bremen*, 407 U.S. at 12–13, 15, 18). The presumption of validity "also applies to form contracts . . . ." *Kevlin Servs. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)). However, forum selection clauses in form contracts "are subject to judicial scrutiny for fundamental fairness," which includes an assessment as to whether reasonable notice was provided. *Carnival Cruise Lines*, 499 U.S. at 595.

Here, Plaintiff presents evidence that the user agreement on its website contained a forum selection clause and that Defendant agreed to this clause by accessing a restricted portion of the site.

---

[3] Courts in the Fifth Circuit apply federal law to issues regarding the enforceability of a forum selection clause, regardless of whether jurisdiction is based on diversity or the existence of a federal question. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997).

Before signing up for Plaintiff's service and logging onto its site, a new member must provide his or her date of birth and email address and select a screen name and password.[4] The user then must click a button labeled "Continue" to reach the next step in the process. Just above this button is a disclaimer that reads as follows: "By clicking Continue, I affirm that I am at least 18 years old, and I have read and agree to the TRUE Terms of Use and Code of Ethics." The words "True Terms of Use" and "Code of Ethics" are hyperlinked, and clicking on the hyperlink causes the respective document to appear in a pop-up window. The website does not, however, require new members to view these documents or scroll through them before proceeding. Once the user clicks on the "True Terms of Use" hyperlink, he or she is connected to the user agreement. Paragraph 13 of the agreement, which is labeled "Disputes" and is the first paragraph under the section labeled "Disputes and Indemnification," provides as follows:

> I agree that if there is any dispute about or involving the Web site and/or the Service, by using the Web site, the dispute will be governed by the laws of the State of Texas without regard to its conflict of law provisions. You agree to personal jurisdiction by and venue in the State of Texas and the U.S. District Court for the Northern District of Texas.

(Pl.'s Ex. A at 5.)

Defendant argues that the sign up process does not provide adequate notice of the forum selection clause and analogizes this case to *O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98 (D. Conn. 1998). The Court, however, does not find the *O'Brien* case, which dealt with whether a ski lift ticket provided reasonable notice, particularly helpful when dealing with the question of whether

---

[4] Because neither party's briefing provides the necessary details as to the layout and design of Plaintiff's website, the Court takes judicial notice of these facts by examining the site located at http://www.true.com. Fed. R. Evid. 201. In doing so, the Court assumes that the site, and most importantly the membership sign up process, has not undergone a major transformation since the events underlying the suit took place.

a website provided adequate notice of its terms of use.

Instead, the Court turns for guidance to *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002), a prominent Internet case in which the Second Circuit held that a website did not reasonably communicate the existence of license terms. Applying state law, the *Specht* court held that a website does not provide reasonable notice of its license terms unless a reasonably prudent website user would have known of the existence of the license terms. 306 F.3d at 30–32. The court found that the site at issue "did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms." *Id.* at 31. The court emphasized that the reference to the existence of license terms was located on a submerged screen and that there was no need for a user to visit that part of the screen before clicking on the button that supposedly manifested assent. *Id.* at 31–32. In this case, however, the setup of Plaintiff's website ensures that a reasonably prudent website user would be aware of the terms of use. The site includes a prominently located reference to the existence of terms of use, as well as a hyperlink to those terms. The reference and hyperlink are located in a part of the website that new users must access before proceeding to a restricted area. Specifically, the reference and hyperlink are located in between a form that requires user input and a button that the user has to click to continue. The user has the option to click on the "Terms of Use" hyperlink, and if he or she does the user agreement appears in a pop-up window where it can be thoroughly reviewed. This particular setup does not raise the same notice concerns as the website in *Specht*.

Furthermore, while Defendant complains that the website did not require him to scroll through the agreement, he points to no authority establishing this as a requirement of notice in the

Internet context. Certainly, the fact that a website requires a user to scroll through an agreement is helpful in proving notice. *See, e.g., Recursion Software, Inc. v. Interactive Intelligence, Inc.*, No. 3:03-CV-2711-B, 2006 U.S. Dist. LEXIS 7314, at *60–64 (N.D. Tex. Feb. 27, 2006) (relying upon *Barnett v. Network Solutions*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied)). However, nothing in the case law indicates that such a feature is a necessary condition of reasonable notice. *See, e.g., Caspi v. Microsoft Network*, 732 A.2d 528, 530–32 (N.J. Super. Ct. App. Div. 1999) (finding reasonable notice where the online subscriber agreement appeared on the screen but scrolling through it was optional); *In re RealNetworks, Inc., Privacy Litigation*, No. 00-C-1366, 2000 WL 631341, at *3 (N.D. Ill. May 9, 2000) (similar holding). As such, the Court concludes that the fact that Plaintiff's website did not require users to scroll through the terms of use does not prevent the Court from finding that the site reasonably communicated the existence of such terms.

Lastly, Defendant complains that he did not actually read the user agreement before signing up for Plaintiff's service. However, "this argument ignores the long standing and generally accepted principle of contract law that, absent fraud or mental incompetence, a person who intentionally signs a document is bound by its contents, whether or not he in fact read the document." *Donovan v. Mercer*, 747 F.2d 304, 309 n.4 (5th Cir. 1984). This rule also "applies to contracts which appear in an electronic format." *Barnett*, 38 S.W.3d at 204 (citing *Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560 (D.N.J. 2000)). Therefore, the fact that Defendant did not read the user agreement does not render the forum selection clause unenforceable.

In conclusion, Defendant has failed to establish that it would be fundamentally unfair to enforce the forum selection clause consenting to personal jurisdiction in Texas. As a result, even

if Defendant had moved for dismissal on the basis of personal jurisdiction, the exercise of jurisdiction would still be appropriate.

### III. Venue

Defendant also moves to dismiss or transfer the case pursuant to Fed. R. Civ. P. 12(b)(3), 28 U.S.C. § 1404(a), or 28 U.S.C. § 1406(a). The Court, however, concludes that dismissal is unwarranted and transfer is unnecessary.

#### A. Dismissal

Dismissal is not appropriate here because venue is proper under the general venue statute. This statute provides that venue is proper in any district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §§ 1391(a)(2), (b)(2). Here, Defendant allegedly injured a business located in this District by submitting a membership application that contained material and false information. (Buell Aff. ¶ 3.) He apparently further harmed this business by accessing its servers, also located here, without appropriate authorization in violation of the Computer Fraud and Abuse Act. (*Id.* ¶ 4.) According to the evidence presented by Plaintiff, Defendant accessed its servers on at least 150 different occasions to send or receive e-mail and to perform searches of the membership database.[5] (*Id.* ¶¶ 4–5.) Based on these facts, venue is proper in this District because a substantial part of the events giving rise to Plaintiff's claims occurred here.

#### B. Transfer

Defendant also moves for a discretionary transfer pursuant to 28 U.S.C. § 1404(a), which

---

[5] Defendant claims that he does not recall taking any action on Plaintiff's service beyond signing up for it. (Wells Decl. ¶ 4.) Nevertheless, when deciding a motion to dismiss for improper venue, all factual conflicts are resolved in favor of the plaintiff. *See Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004).

provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." However, for the reasons stated below, the Court finds that transfer is unnecessary in this particular case.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations omitted). "A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Id.*

"[T]he first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Here, Defendant requests transfer to the district in which he resides, so the Court summarily concludes that suit could have been brought there without any foreseeable venue or jurisdictional issues.

Having determined that the lawsuit could have been brought in the Northern District of California, the next step is to examine whether transfer is convenient and in the interest of justice. *Id.* "The determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Id.* "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* "The public concerns include: (1) the

administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* In determining whether transfer is appropriate, a forum selection clause is "a significant factor that figures centrally in the district court's calculus," but it is not dispositive. *Stewart*, 487 U.S. at 29, 31. The plaintiff's choice of forum is also "a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003). Ultimately, the burden is on the movant to show that the transfer is convenient and in the interests of justice. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

Balancing these factors here, the Court concludes that a transfer is unnecessary in this particular case. As discussed above, Plaintiff has presented evidence that Defendant agreed to a forum selection clause establishing venue in this jurisdiction, and Defendant has not shown that enforcing this clause would be unreasonable under the circumstances. Furthermore, Defendant has failed to show that there are other factors favoring transfer that outweigh the forum selection clause.

Despite Defendant's arguments to the contrary, the convenience of witnesses is a neutral factor in this case. Defendant maintains that California is a more convenient venue because an unidentified key witness resides there. However, "the moving party must do more than make a general allegation that certain key witnesses are needed." *Dupre*, 810 F. Supp. at 825. "The movant must specifically identify the key witnesses and outline the substance of their testimony." *Id.* Defendant has not done so here, and therefore his bare allegation regarding an unidentified key witness carries little weight in the transfer analysis. Defendant also points out that it may be

necessary for certain Californians to testify regarding whether they had knowledge of his criminal background and what impact, if any, such knowledge had on their opinion of Plaintiff's service. Defendant does not explain, however, why such testimony would be limited to Californians, nor does he explain how California would be a more convenient forum should witnesses from a number of states need to testify on this issue. In addition, there is evidence that all of Plaintiff's employees with knowledge of the matter reside in this District, and consequently one practical effect of a transfer would be to shift the inconvenience from the movant to the non-movant. *See Enserch International Exploration, Inc. v. Attock Oil Co.*, 656 F. Supp. 1162, 1167 (N.D. Tex. 1987) ("The court should not transfer venue where the result will be merely to shift the expense and inconvenience from one party to the other.") Given these considerations, the Court concludes that the convenience of the witnesses weighs neither for nor against transfer.

Furthermore, the Court is not convinced that a transfer would promote judicial efficiency due to the possibility of consolidating this case with a related action in California. The two cases involve completely different legal and factual issues, and therefore it is unlikely that the cases would end up being consolidated for discovery or any other purpose. The instant suit involves claims against Defendant arising out of his decision to sign up for Plaintiff's service, whereas the California suit involves claims against Plaintiff arising out of its handling of the publicity surrounding the instant suit. Given the substantial differences between the two cases, the existence of a related suit has little bearing on the transfer decision.

Finally, there is no indication that the forum selection clause was included to punish or harass the defendant. The clause is part of a form user agreement and appears to be a reasonable attempt

by an Internet company to limit the fora in which it is subject to suit.

In short, Defendant fails to carry his burden of showing that transfer is convenient and in the interests of justice. Absent a more compelling showing, the Court refuses to exercise its discretion pursuant to 28 U.S.C. § 1404(a).

### Conclusion

For the reasons stated above, the Court hereby GRANTS Defendant's Motion to Set Aside Default and DENIES Defendant's Motion to Dismiss or Transfer Venue. In addition, Plaintiff's request for attorney's fees is GRANTED. Plaintiff shall file admissible evidence of the attorney's fees and costs incurred in requesting entry of default within 20 days of the date this order is filed. Defendant shall have 10 days from the date of Plaintiff's submission to file any objections.

**IT IS SO ORDERED.**

Signed this _15th_ day of May 2006.

                                   JORGE A. SOLIS
                                   UNITED STATES DISTRICT JUDGE